IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AZHANG SHAINE AAZAMI,                           3:17-cv-01564-BR

        Plaintiff,                      OPINION AND ORDER

v.

WELLS FARGO BANK, N.A.,
a California Corporation; and
QUALITY LOAN SERVICE
CORPORATION OF WASHINGTON,
a Washington Corporation,

        Defendants.


**JEFFREY A. LONG**
Oregon Consumer Law Center
4248 Galewood St.
Lake Oswego, OR 97035
(503) 374-9777

**MARC E. DANN**
DannLaw
2728 Euclid Ave
Suite 300
Cleveland, OH 44115
(216) 373-0539

        Attorneys for Plaintiff

**JOSEPH A. ROHNER IV**
Anglin Flewelling Rasmussen Campbell & Trytten LLP
121 S.W. Salmon St.
Suite 1100
Portland, OR 97204
(503) 471-1384

       Attorneys for Defendant Wells Fargo Bank, N.A.

**JOHN M. THOMAS**
McCarthy & Holthus
920 S.W. Third Avenue
Portland, OR 97204
(971) 201-3203

       Attorneys for Defendant Quality Loan Service
       Corporation of Washington


**BROWN, Judge.**

This matter comes before the Court on Plaintiff's Motion (#2) for Preliminary Injunction. For the reasons that follow, the Court **DENIES** Plaintiff's Motion.


<u>BACKGROUND</u>

The following facts are taken from the Complaint and the parties' filings related to Plaintiff's Motion for Preliminary Injunction.

On January 2, 2013, Plaintiff Azhang Shaine Aazami executed a 30-year fixed-rate FHA loan via a promissory note for $405,300.00 with nonparty USA Direct Funding as the lender. Plaintiff also executed a Trust Deed securing the property with MERS acting "solely as the nominee for Lender" and as

beneficiary.  Compl., Ex. 4 at 4.  The Trust Deed was recorded in the records of Jackson County on January 7, 2013.

Also on January 2, 2013, Plaintiff executed an Allonge to Note as follows:

> IN FAVOR OF:  USA DIRECT FUNDING
>
> AND EXECUTED BY:  [PLAINTIFF]
>
> PAY TO THE ORDER OF [WELLS FARGO BANK, N.A.]
> WITHOUT RECOURSE USA DIRECT FUNDING

Compl., Ex. 4 at 13.

On August 1, 2014, Plaintiff failed to make his required mortgage payment.[1]

On August 14, 2014, MERS, acting as nominee, assigned the Trust Deed to Defendant Wells Fargo.  The Assignment of Trust Deed was recorded in Jackson County on August 14, 2014.

On December 31, 2015, Wells Fargo appointed Defendant Quality Loan Services (QLS) as the Trustee.

On June 1, 2017, QLS executed a Notice of Sale as to Plaintiff's property to be held October 16, 2017.

On October 4, 2017, Plaintiff filed an action in this Court against Wells Fargo and QLS.  Plaintiff seeks declaratory judgment that "none of the Defendants is in fact the beneficiary of the Note and the actual beneficiary as defined under ORS

---

[1] At oral argument on Plaintiff's Motion for Preliminary Injunction Plaintiff's counsel advised the Court that Plaintiff has not made any mortgage payments since August 1, 2014.

86.735, that the actual beneficiary of the Note has not been made known to the Plaintiff and therefore the Defendants cannot conduct a non-judicial sale on this property under ORS § 86.705 *et seq*." Compl. at ¶ 19. Plaintiff also brings claims for breach of contract and violation of 12 C.F.R. § 1024.36 and 12 C.F.R. § 1024.35.

On October 12, 2017, Plaintiff filed a Motion (#5) for Temporary Restraining Order in which he sought an order barring the nonjudicial foreclosure scheduled for October 16, 2017. Defendants agreed to defer the foreclosure sale until after the Court decided Plaintiff's Motion.

On October 26, 2017, the Court held a hearing on Plaintiff's Motion for Temporary Restraining Order at which both Defendants appeared. On October 26, 2017, the Court entered an Order granting Plaintiff's Motion for Temporary Restraining Order, directing the parties to engage in limited discovery, and setting a preliminary-injunction hearing on January 3, 2018.

On December 4, 2017, Plaintiff filed a Motion (#20) for Preliminary Injunction in which he seeks an order barring the nonjudicial foreclosure scheduled for February 5, 2018.

On January 3, 2018, the Court heard oral argument on Plaintiff's Motion for Preliminary Injunction. The Court directed the parties to file a joint Stipulated Supplement to the Record and to advise the Court no later than January 5, 2018,

(1) whether Plaintiff is asserting Wells Fargo was not in possession of the Note and Allonge to Note at the time it appointed QLS as the successor trustee and/or at the time QLS initiated foreclosure proceedings and (2) whether Wells Fargo is asserting it was in physical possession of the Note and Allonge to Note at the time it appointed QLS as the successor trustee and/or at the time QLS initiated foreclosure proceedings.

On January 5, 2018, the parties filed a Joint Concise Statement in which they advised the Court that (1) Plaintiff is asserting Wells Fargo was not in possession of the Note and Allonge to Note at the time it appointed QLS as the successor trustee and/or at the time QLS initiated foreclosure proceedings and (2) Wells Fargo is asserting it was in possession of the Note and Allonge to Note at the time it appointed QLS as the successor trustee and/or at the time QLS initiated foreclosure proceedings. Wells Fargo stated it would provide a Declaration or "other evidence" in support of its assertion if requested.

On January 8, 2018, the Court issued an Order in which it directed Wells Fargo to file evidence in support of its assertions in the Joint Statement no later than January 16, 2018, and permitted Plaintiff to file a response no later than January 26, 2018.

The Court took this matter under advisement on January 26, 2018.

## STANDARDS

A party seeking a preliminary injunction must demonstrate (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council,* 129 S. Ct. 365, 374 (2008).

"The elements of [this] test are balanced, so that a stronger showing of one element may offset a weaker showing of another. For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *Alliance For The Wild Rockies v. Cottrell*, No. 09-35756, 2011 WL 208360, at *4 (9th Cir. Jan. 25, 2011) (citing *Winter*, 129 S. Ct. at 392). Accordingly, the Ninth Circuit has held "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.*, at *7. "An injunction is a matter of equitable discretion" and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 129 S. Ct. at 376, 381.

**<u>DISCUSSION</u>**

At oral argument Plaintiff advised the Court that he seeks the specified injunctive relief enjoining the February 5, 2018, sale based only on his First and Second Claims for Declaratory Judgment and Breach of Contract.

## I. Plaintiff's Claim for Declaratory Judgment

In his First Claim for Declaratory Judgment Plaintiff asserts Defendants violated the Oregon Trust Deed Act (ODTA), Oregon Revised Statutes § 86.705, *et. seq.*, with respect to the Trust Deed and Note on the ground that MERS did not have the authority to assign the beneficial interest under the Trust Deed, and, therefore, all subsequent nonjudicial foreclosure activities, including QLS's attempted sale, "are void *ab initio*." Plaintiff relies on the Oregon Supreme Court's decision in *Brandrup v. ReconTrust Co*, 353 Or. 668 (2013), to support his assertion.

In *Brandrup* the Oregon Supreme Court addressed whether MERS can be a beneficiary under the ODTA and noted "[f]or the purposes of O.R.S. § 86.735(1), the 'beneficiary' is the lender to whom the obligation that the trust deed secures is owed or the lender's successor in interest." *Brandrup*, 353 Or. at 673-74. The Court concluded MERS cannot be the beneficiary because it does not hold the beneficial right to repayment of the

obligation. *Id*. at 693. "For the purposes of the OTDA, the only pertinent interests in the trust deed are the beneficial interest of the beneficiary and the legal interest of the trustee." *Id*. at 675.

The court also concluded in *Brandrup* that "the person entitled to repayment of the secured obligation also controls the foreclosure process." *Id*. at 688. "Because MERS does not have the right to receive repayment of the notes in these cases, the OTDA does not allow MERS to hold and transfer legal title to the trust deeds that secure them." *Id*. at 705. Thus, "[a]ny such transfers are invalid." *Id*. at 707. The *Brandrup* court, however, "also re-affirmed the longstanding principal [*sic*] that when a promissory note changes hands, the securing deed of trust follows by operation of law." *Romani v. NW Trustee Svcs*., No. 3:11-cv- 0382-PA, 2013 WL 6530583, at *3 (D. Or. Dec. 12, 2013)(citing *Brandrup*, 353 Or. at 694). Thus, when a promissory note is transferred, the Deed of Trust also "transfers by operation of law and the party entitled to payment under the Note is the beneficiary notwithstanding the designation of MERS as the beneficiary in the Deed of Trust." *Id*.

In *Romani* the plaintiff's Trust Deed identified MERS as the beneficiary "solely as nominee for Lender and Lender's successors and assigns." The Lender in the promissory note was Sunset Mortgage, but Sunset subsequently transferred the Note "by

endorsement in blank to Wells Fargo Bank, N.A." 2013 WL 6530583, at *1. Ultimately MERS transferred the Trust Deed to Wells Fargo, and Wells Fargo began foreclosure on the plaintiff's property. The plaintiff brought an action to rescind the trustee sale alleging, among other things, that the designation of MERS as beneficiary was invalid. The district court reviewed the Oregon Supreme Court's holding in *Brandrup* and agreed MERS could not hold or transfer legal title to the Trust Deed securing the plaintiff's mortgage. The district court, however, also noted *Brandrup's* affirmation that "when a promissory note changes hands, the securing deed of trust follows by operation of law." In *Romani* the record reflected

> the Note was transferred by endorsement in blank
> to Wells Fargo by the original lender[, the] Deed
> of Trust . . . also transferred to Wells Fargo, by
> operation of law. As the party entitled to
> payment under the Note and Deed of Trust, Wells
> Fargo was the beneficiary, notwithstanding the
> designation of MERS as beneficiary in the Deed of
> Trust.

2013 WL 6530583, at *3. The district court, therefore, concluded although

> [a]ny purported assignments of the Deed of Trust
> by MERS are legal nullities[,] Wells Fargo, as
> holder of the Note, possessed the right to appoint
> a successor trustee and to take all of the other
> actions necessary to initiate the non-judicial
> foreclosure. [Thus,] The involvement of MERS does
> not invalidate the completed sale.

*Id.*

As noted, here Wells Fargo asserts the Note was transferred

to Wells Fargo from USA Direct Funding by the January 2, 2013,
Allonge to Note, and, therefore, Wells Fargo was the beneficiary
of the Trust Deed at all relevant times notwithstanding the
designation of MERS as beneficiary in the Deed of Trust.  As in
*Romani*, the purported assignment of the Trust by MERS is a "legal
nullity," but, nevertheless, Wells Fargo as holder of the Note
possessed the right to appoint a successor trustee and to take
all of the other actions necessary to initiate the nonjudicial
foreclosure.  Thus, the involvement of MERS here does not justify
enjoining Defendants' efforts to complete a non-judicial
foreclosure sale.

As noted, Plaintiff asserts Wells Fargo has not established
it was in possession of the Note and Allonge to Note at the time
it appointed QLS as the successor trustee and/or at the time QLS
initiated foreclosure proceedings, and, therefore, it was not a
"person entitled to enforce [the Note]" pursuant to Oregon's
Uniform Commercial Code.  Specifically, Oregon Revised Statutes
§ 73.0203(1) states "[a negotiable] instrument is transferred
when it is *delivered* . . . for the purpose of giving to the
person receiving delivery the right to enforce the instrument."
Emphasis added.  Oregon Revised Statutes § 73.02030(2) explains
"[t]ransfer of an instrument vests in the transferee any right of
the transferor to enforce the instrument, including any right as
a holder in due course."  Finally, Oregon Revised Statutes

§ 73.0301 defines a "person entitled to enforce an instrument" as "the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument." Thus, for example, the court in *LNV Corp. v. Fauley* held

> the fact that the trust deed and Note have taken divergent paths is entirely inapposite. There is no question that the Note has been transferred to LNV by endorsement, *and that LNV is in current physical possession of the Note.* Therefore, LNV is the entity entitled to repayment of the [N]ote obligation, and, in turn, LNV is the beneficiary of the trust deed, irrespective of its "muddled" chain of title.

178 F. Supp. 3d 1043, 1048 (D. Or. 2016)(emphasis added).

Although the parties' initial filings related to Plaintiff's Motion for Preliminary Injunction established the Note had been transferred by Allonge to Wells Fargo, those filings did not establish Wells Fargo was in physical possession of the Note and Allonge to Note at all relevant times. On January 16, 2018, however, Wells Fargo filed the Declaration of Meredith Deal in Response to the Court's January 8, 2018, Order. Deal testifies in her Declaration that she is a Vice President of Loan Documentation for Wells Fargo; that she has personal knowledge generally of Wells Fargo's practices and procedures "in making and maintaining business records" and specifically of the matters pertaining to this action; and that

> Wells Fargo currently has possession of the
> original Note with the attached Allonge. Wells
> Fargo came into possession on January 24, 2013 and
> has maintained continuous possession from that
> time, including December 31, 2015, when it
> appointed Quality Loan Service Corporation of
> Washington as the successor trustee of said Deed
> of Trust, recorded on January 12, 2016 in the
> Jackson County Official Records, No. 2016-000798.
> Wells Fargo also had possession of the original
> Note and Allonge when non-judicial foreclosure
> proceedings began in June 2017.

Decl. of Meredith Deal at ¶ 5  Plaintiff did not submit any

evidence in response that established or suggests Wells Fargo was

not in possession of the Note and Allonge to Note at all relevant

times.

On this record the Court concludes Wells Fargo has

established it was in physical possession of the Note and Allonge

to Note at all relevant times and, therefore, is a "person

entitled to enforce" the Note and Deed of Trust.  As a result,

the Court also concludes the purported assignment of the Trust

Deed by MERS is a legal nullity, but, nevertheless, Wells Fargo,

as holder of the Note, possessed the right to appoint a successor

trustee and to take all of the other actions necessary to

initiate the nonjudicial foreclosure.  Accordingly, the actions

of MERS do not provide a basis to enjoin the February 5, 2018,

sale.

The Court, therefore, concludes Plaintiff has not

established a likelihood of success on the merits of his claim

for Declaratory Judgment for violation of the ODTA.

**II.  Plaintiff's Claim for Breach of Contract**

In his Second Claim Plaintiff alleges Defendants breached the Trust Deed and Note when they failed to meet a condition precedent required for acceleration of the mortgage. Specifically, Plaintiff asserts Defendants failed to arrange a face-to-face interview with Plaintiff "before three full monthly installments due on the mortgage [we]re unpaid" as required by Housing and Urban Development (HUD) regulation 24 C.F.R. § 203.604.  Plaintiff seeks damages on his Second Claim "in an amount to be determined at trial but not to exceed $466,000.00."

"To state a claim for breach of contract, plaintiff must allege the existence of a contract, 'its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff.'" *Slover v. Or. Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570 (1996)(quoting *Fleming v. Kids and Kin Head Start*, 71 Or. App. 718, 721 (1985)).

Courts that have addressed the issue have concluded "the breach of [HUD servicing] regulations [such as 24 C.F.R. § 203.604] do[es] not ordinarily provide a private right of action." *Fowler v. Wells Fargo Bank, N.A., No.* 3:2017cv02092, 2017 WL 3977385, at *4 (N.D. Cal. Sept. 11, 2017)(quotations omitted).  Nevertheless, in *Fowler* the court concluded HUD regulations "that are properly incorporated into a contract [may] form the basis of a breach of contract claim." *Id.*  In *Fowler*

the plaintiff "identified the provision of the promissory note —
allegedly incorporating [the HUD regulations] — that Defendant
allegedly breached and her resulting damages.  The Court finds
that this is enough . . . to survive at the motion to dismiss
stage."  *Id*.

Here in Plaintiff's supplemental Response he asserts the
Note and Trust Deed incorporated the HUD regulations by
reference.  Specifically, the Note provides:

> If Borrower defaults by failing to pay in full any
> monthly payment, then Lender may, *except as
> limited by regulations of the Secretary in the
> case of payment defaults*, require immediate
> payment in full of the principal balance remaining
> due and all accrued interest. . . .  This Note
> does not authorize acceleration when not permitted
> by HUD regulations.

Compl., Ex. 4 at 11 (emphasis added).  The Trust Deed provides:

> In many circumstances regulations issued by the
> Secretary [of HUD] will limit Lender's rights, in
> the case of payment defaults, to require immediate
> payment in full and foreclose if not paid.  This
> Security instrument does not authorize
> acceleration or foreclosure if not permitted by
> regulations of the Secretary.

Compl., Ex. 4 at 8.  Although the Ninth Circuit has not reached
the issue, many courts have concluded inclusion of these types of
provisions in Trust Deeds and Notes is sufficient to incorporate
HUD regulations into Trust Deeds and Notes for breach-of-contract
claims.  *See, e.g., Fowler*, 2017 WL 3977385, at *4 (finding the
plaintiff had established the trust deed and note incorporated
HUD regulations when they were referenced in the trust deed and

14 - OPINION AND ORDER

note); *Wright v. Wells Fargo*, No. 1:15-cv-02416-AT-JCF, 2015 WL 12159206, at *5 (N.D. Ga. Oct. 8, 2015)(same); *Njema v. Wells Fargo*, 124 F. Supp. 3d 852, 864 (D. Minn. 2015)(same). *But see Klein v. Wells Fargo*, No. A-14-CA-861-SS, 2014 WL 5685113, at *6 (W.D. Tex. Nov. 4, 2014)(finding the plaintiff did not have a private right of action "notwithstanding referenced HUD regulations in the note and deed of trust."). This Court, however, need not decide whether the reference to HUD regulations in the Trust Deed and Note incorporate those regulations by reference sufficiently to support Plaintiff's claim for breach of contract because Plaintiff fails to plead or to establish how Defendants' alleged breach caused Plaintiff's damages.

As noted, Plaintiff alleges Defendants violated HUD regulation 24 C.F.R. § 203.604, which requires the mortgagee to have a "face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid." Plaintiff, however, does not plead in his Complaint or explain in his papers in support of his Motion for Preliminary Injunction how Defendants' failure to arrange a face-to-face interview after Plaintiff defaulted on his mortgage caused Plaintiff to suffer the alleged $466,000 in damages. Although it is not clear how Plaintiff calculated his alleged damages, it appears it may be the full amount Plaintiff owed on his mortgage, which included

unpaid principal, interest fees, and charges as of May 2017. In
any event, Plaintiff does not point to any evidence that
Defendants' failure to arrange or to try to arrange a face-to-
face meeting was the cause of Plaintiff's default or failure to
pay his mortgage after August 2014.

Courts in similar circumstances have held the plaintiffs
failed to support their breach-of-contract claims. For example,
in *Njema* the plaintiff defaulted on his mortgage and the
defendant foreclosed on the mortgage. The plaintiff brought a
breach-of-contract claim against the defendant on the ground that
the defendant breached HUD regulation 24 C.F.R. § 203.604, which
the plaintiff asserted was incorporated by reference in his Note
and Trust Deed. The court concluded the plaintiff failed to
prove that he suffered damages as a result of the defendant's
failure to conduct a face-to-face meeting. The court rejected
the plaintiff's assertion that the harm he suffered was caused by
the foreclosure, and the court pointed out that the evidence
established "the foreclosure was due to [the plaintiff's] default
on [his] . . . mortgage loan." 124 F. Supp. 3d at 866. The
court also rejected the plaintiff's assertion that the plaintiff
would have received a loan modification and avoided foreclosure
if a face-to-face meeting had occurred. The court noted that
argument was "completely speculative and, frankly, irrelevant."
*Id*.

Similarly, in *Wright* the plaintiff defaulted on her mortgage and the defendant began foreclosure proceedings.  The plaintiff filed an action alleging, among other things, a claim for breach of contract based on the defendant's alleged failure to have a face-to-face meeting as required by 24 C.F.R. § 203.604.  The defendant filed a motion to dismiss the plaintiff's breach-of-contract claim.  The court concluded the plaintiff had established the note and trust deed incorporated the HUD regulations and that the defendant breached the regulations incorporated in the note and trust deed when it failed to conduct a face-to-face meeting before initiating foreclosure proceedings. 2015 WL 12159206, at *5.  The court, however, granted the defendant's motion to dismiss on the ground that the plaintiff failed to plead damages that resulted from the defendant's alleged violation.  *Id.*  Specifically, the plaintiff asserted she suffered damages as a result of the defendant's breach because the defendant reported the plaintiff's default to various credit agencies, which resulted in the plaintiff receiving a lower credit score and "blocked Plaintiff from obtaining credit."  *Id.*, at *6.  The court, however, concluded these allegations did not "plausibly show" the defendant's failure to conduct a face-to-face meeting caused her damages because "the alleged damages to Plaintiff's credit and reputation were caused by her own undisputed failure to make loan payments, not the alleged actions

of [the defendant]." *Id.* *See also Rourk v. Bank of N. Am. Nat.*
*Ass'n*, No. 4:12-CV-42 (CDL), 2013 WL 5595964, at *6 (M.D. Ga.
Oct. 11, 2013)("Even if Defendant had not substantially complied
with [§203.604], it was Plaintiff's failure to tender a single
payment for nearly two years that caused her default status and
the foreclosure. Therefore, even if Plaintiff had demonstrated
that Defendant failed to make a reasonable effort to arrange a
face-to-face meeting with her, she has not established that such
a failure caused her any damages.").

On this record the Court concludes Plaintiff has failed to
plead or to point to evidence in the record sufficient to
establish that Defendants' alleged failure to comply with 24
C.F.R. § 203.604 caused Plaintiff's alleged damages. The Court,
therefore, concludes Plaintiff has not established she has a
likelihood of success on the merits of her claim for breach of
contract.

**III. Irreparable Harm**

Plaintiff asserts he is likely to suffer irreparable harm
from the foreclosure sale of his home.

This Court and other courts in this district have held the
loss of a home may result in irreparable harm. *See, e.g., Gosha*
*v. Bank of New York Mellon Corp.,* 3:16-CV- 00073-BR, 2016 WL
9211686, at *1 (D. Or. Jan. 25, 2016)(granting the plaintiff a
temporary restraining order when it was a close question on the

merits but the potential harm to plaintiffs, who were senior citizens on a fixed income, was great); *Irvin v. HSBC Bank USA, N.A.*, No. 3:17–cv–01751–SI, 2017 WL 5075246, at *2 (D. Or. Nov. 3, 2017)(granting a preliminary injunction when the plaintiffs had lived in their home for 11 years and "retrofitted and customized this home to adapt to the needs of their special needs children."). Here Plaintiff lived in the house for only 19 months before defaulting on his mortgage, and he has lived in the house for 3.5 years after his default without making any payments. Under these circumstances the Court concludes Plaintiff has not established he will suffer irreparable harm from the foreclosure sale.

Accordingly, the Court concludes this factor does not provide any persuasive weight in favor of injunctive relief.

IV.  **Public Interest**

"When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the preliminary injunction analysis." *Stormans v. Selecky*, 586 F.3d 1109, 1138–39 (9th Cir. 2009). When the impact of the injunction reaches beyond the parties and potentially impacts the public, the public interest is relevant to the analysis. *Id*. Here Plaintiff's Motion is limited to restraining Defendants from conducting the foreclosure sale and does not involve any

nonparties to the action.

Accordingly, the Court concludes this factor is neutral.

**V.    Balancing the Equities**

As noted, the Court has concluded under these circumstances that Plaintiff has not established he will suffer irreparable harm from the foreclosure sale because Plaintiff has lived in the house for approximately five years, but he has not made a mortgage payment for 3.5 years.  Moreover, Plaintiff does not allege he is capable of curing his default or tendering his indebtedness.  In addition, Plaintiff has not established a likelihood of success on the merits of his Motion for Preliminary Injunction.

On this record the Court concludes the balance of equities favors Defendants.  Accordingly, the Court denies Plaintiff's Motion for Preliminary Injunction.


<u>**CONCLUSION**</u>

For these reasons, the Court **DENIES** Plaintiff's Motion (#2) for Preliminary Injunction.

The Court **DIRECTS** the parties to confer and to file a proposed joint case-management schedule for resolution of the

remaining issues in this matter **no later than February 20, 2018.**

IT IS SO ORDERED.

DATED this 6th day of February, 2018.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States Senior District Judge