**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**AZHANG SHAINE AAZAMI,**                              **3:17-cv-01564-BR**

       **Plaintiff,**                              **OPINION AND ORDER**

**v.**

**WELLS FARGO BANK, N.A.,**
**a California Corporation, and**
**QUALITY LOAN SERVICE**
**CORPORATION OF WASHINGTON,**
**a Washington Corporation,**

       **Defendants.**


**JEFFREY A. LONG**
Oregon Consumer Law Center
4248 Galewood St.
Lake Oswego, OR 97035
(503) 374-9777

**MARC E. DANN**
DannLaw
2728 Euclid Ave
Suite 300
Cleveland, OH 44115
(216) 373-0539

      Attorneys for Plaintiff

**BARBARA L. BOLLERO**
**ANN T. MARSHALL**
Anglin Flewelling Rasmussen Campbell & Trytten LLP
701 Pike Street
Suite 1560
Seattle, WA 98101
(206) 492-2300

      Attorneys for Defendant Wells Fargo Bank, N.A.

**JOHN M. THOMAS**
McCarthy & Holthus
920 S.W. Third Avenue
Portland, OR 97204
(971) 201-3203

      Attorneys for Defendant Quality Loan Service
      Corporation of Washington


**BROWN, Judge.**

This matter comes before the Court on the Request (#44) of

Defendant Wells Fargo Bank, N.A., for Judicial Notice;

Plaintiff's Request (#62) for Judicial Notice; Wells Fargo's

Motion (#65) to Strike (part of Wells Fargo's Reply to its Motion

for Summary Judgment)[1]; Wells Fargo's Motion (#57)[2] for Summary

---

[1] Although Local Rule 7-1(b) prohibits parties from combining motions "with any response, reply, or other pleading," the Court will consider Wells Fargo's Motion to Strike due to the late stage of the pleadings and the fact that Wells Fargo conferred with Plaintiff before bringing the Motion to Strike.

[2] On August 21, 2018, Wells Fargo filed a Motion (#41) for Summary Judgment. On November 6, 2018, Wells Fargo filed a Memorandum (#57) in Support of its Motion for Summary Judgment in which it states the Memorandum "entirely supplants [its] original Motion for Summary Judgment." Accordingly, although Wells Fargo did not title its November 6, 2018, Memorandum as a Motion for Summary Judgment, the Court will treat it as an Amended Motion for Summary Judgment.

Judgment; and the Motion (#59) for Summary Judgment of Defendant Quality Loan Services (QLS).

For the reasons that follow, the Court **GRANTS** Wells Fargo's Request for Judicial Notice, **GRANTS** Plaintiff's Request for Judicial Notice, **GRANTS** Wells Fargo's Motion to Strike, and **GRANTS** Defendants' Motions for Summary Judgment.


## BACKGROUND

The following facts are taken from the Complaint, the parties' Joint Statement of Agreed Facts, and the parties' filings related to Defendants' Motions for Summary Judgment and the parties' Requests for Judicial Notice.

On January 2, 2013, Plaintiff Azhang Shaine Aazami and his wife Aletia Aazami[3] executed a 30-year fixed-rate FHA loan via a promissory note for $405,300.00 with nonparty USA Direct Funding as the lender. Plaintiff also executed a Trust Deed securing certain residential real property with MERS acting "solely as the nominee for Lender" and as beneficiary. Joint Statement of Agreed Facts, Ex. B. The Trust Deed was recorded in the records of Jackson County on January 7, 2013.

---

[3] Aletia Aazami is not a party to this action.

Also on January 2, 2013, Plaintiff executed an Allonge[3] to Note as follows:

> IN FAVOR OF:  USA DIRECT FUNDING
>
> AND EXECUTED BY:  [PLAINTIFF]
>
> PAY TO THE ORDER OF [WELLS FARGO BANK, N.A.]
> WITHOUT RECOURSE USA DIRECT FUNDING

Compl., Ex. 4 at 13.

On June 23, 2014, Wells Fargo sent the Aazamis a letter in which it advised:

> Your mortgage loan is in default.  Please contact us immediately to discuss your situation.  We would like to meet with you to review your financial situation and determine possible options to assist you in bringing your loan current.
>
> Please call us at 1-800-416-1472 to set up a time to discuss your financial situation.

Joint Statement of Agreed Facts, Ex. C.

On June 30, 2014, the Aazamis signed a certified mail return-receipt indicating they had received Wells Fargo's June 23, 2014, letter.

On August 14, 2014, MERS, acting as nominee, assigned the Trust Deed to Wells Fargo.  The Assignment of Trust Deed was recorded in Jackson County on August 14, 2014.

On September 5, 2014, the Aazamis signed an FHA HAMP Trial

---

[3] An allonge is a "slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." *Allonge*, Black's Law Dictionary (8th ed. 2004).

Plan – Terms and Conditions (the HAMP TPP), in which they agreed to a trial plan of payments due October, November, and December 1, 2014. The parties agree, however, that Plaintiff has not made any mortgage payments since at least August 1, 2014.

On October 7, 2015, the State of Oregon Foreclosure Avoidance Program issued a Certificate of Compliance with the Oregon Foreclosure Avoidance Program and indicated the Aazamis "did not pay the required fee by the deadline." Joint Statement of Agreed Facts, Ex. G.

On December 31, 2015, Wells Fargo appointed Defendant QLS as the Trustee of the Deed of Trust. The Appointment was recorded in Jackson County on January 12, 2016.

On June 8, 2016, Aletia Aazami quit-claimed her interest in the property to Plaintiff. The Quitclaim Deed was recorded in Jackson County on June 13, 2016.

On April 17, 2017, the State of Oregon Foreclosure Avoidance Program issued a Certificate of Compliance with the Oregon Foreclosure Avoidance Program and indicated Plaintiff "complied with the requirements [of the program]." Joint Statement of Agreed Facts, Ex. J.

On May 15, 2017, Plaintiff sent three Requests for Information (RFI) to Wells Fargo seeking various documents pursuant to Regulation X of the Mortgage Servicing Act, 12 C.F.R. § 1024.36. Wells Fargo responded to Plaintiff's requests on

May 22 and 24, 2017.

On May 30, 2017, QLS recorded in Jackson County a Notice of Default and Election to Sell Plaintiff's property in which it noted a scheduled sale of Plaintiff's property would be held October 16, 2017.

On July 19, 2017, Plaintiff sent to Wells Fargo a Notice of Error (NOE) pursuant to 12 C.F.R. § 1024.35(b)(11) in which Plaintiff alleged Wells Fargo had failed to respond properly to Plaintiff's RFIs.  Wells Fargo received the NOE on July 25, 2017.

On August 3, 2017, Wells Fargo responded to Plaintiff's NOE.

On September 11, 2017, QLS recorded in Jackson County another Notice of Default and Election to Sell Plaintiff's property in which it noted a sale of Plaintiff's property scheduled for October 16, 2017.

On October 4, 2017, Plaintiff filed an action in this Court against Wells Fargo and QLS.  Plaintiff seeks declaratory judgment that "none of the Defendants is in fact the beneficiary of the Note and the actual beneficiary as defined under ORS 86.735, that the actual beneficiary of the Note has not been made known to the Plaintiff and therefore the Defendants cannot conduct a non-judicial sale on this property under ORS § 86.705 *et seq.*"  Compl. at ¶ 19.  Plaintiff also brings claims for breach of contract, violation of 12 C.F.R. § 1024.36, and violation of 12 C.F.R. § 1024.35.

On October 12, 2017, Plaintiff filed a Motion for Temporary Restraining Order in which he sought an order barring the nonjudicial foreclosure sale scheduled for October 16, 2017. Defendants agreed to defer the foreclosure sale until after the Court decided Plaintiff's Motion.

On October 26, 2017, the Court held a hearing on Plaintiff's Motion for Temporary Restraining Order at which both Defendants appeared. On October 26, 2017, the Court entered an Order granting Plaintiff's Motion for Temporary Restraining Order, directing the parties to engage in limited discovery, and setting a preliminary-injunction hearing on January 3, 2018.

On December 4, 2017, Plaintiff filed a Motion for Preliminary Injunction in which he sought an order barring the nonjudicial foreclosure.

On January 3, 2018, the Court heard oral argument on Plaintiff's Motion for Preliminary Injunction. The Court directed the parties to file a joint Stipulated Supplement to the Record related to Plaintiff's assertions as to Wells Fargo's possession of the Note and Allonge to Note at the time QLS initiated foreclosure proceedings.

On January 16, 2018, Wells Fargo filed the Declaration of Meredith Deal in which she testified in pertinent part:

> Wells Fargo currently has possession of the
> original Note with the attached Allonge. Wells
> Fargo came into possession on January 24, 2013 and
> has maintained continuous possession from that

> time, including December 31, 2015, when it
> appointed Quality Loan Service Corporation of
> Washington as the successor trustee of said Deed
> of Trust, recorded on January 12, 2016 in the
> Jackson County Official Records, No. 2016-000798.
> Wells Fargo also had possession of the original
> Note and Allonge when non judicial foreclosure
> proceedings began in June 2017.

Deal Decl. at ¶ 5.

On February 6, 2018, the Court issued an Opinion and Order denying Plaintiff's Motion for Preliminary Injunction.

On November 6, 2018, Wells Fargo filed the pleading the Court deems to be an Amended Motion for Summary Judgment. On November 8, 2018, QLS filed a Motion for Summary Judgment Joining in Wells Fargo's Motion for Summary Judgment. On December 4, 2018, Plaintiff filed a Request for Judicial Notice. On December 14, 2018, Wells Fargo filed a Motion to Strike as part of its Reply to its Motion for Summary Judgment. Plaintiff did not file a response to Wells Fargo's Motion to Strike.

The Court took the parties' Motions under advisement on December 28, 2018.

## REQUESTS FOR JUDICIAL NOTICE

Wells Fargo requests the Court to take judicial notice of ten documents that are recorded in various county offices and publicly available including, for example, the Trust Deed, the Assignment of Trust Deed, the Notice of Default, and similar documents. Plaintiff does not object to Wells Fargo's request

8 - OPINION AND ORDER

and relies on many of the same documents.

Plaintiff requests the Court to take judicial notice of page 595 of the United States Department of Housing and Urban Development FHA Single Family Housing Policy Handbook (III)(A)(2)(h)(xii) Face-to-Face Interviews. Defendant does not oppose Plaintiff's Request other than to note that the web address for the complete Policy Handbook provided in Plaintiff's Request for Judicial Notice is incorrect. The correct address is: https://www.hud.gov/sites/documents/40001HSGH.PDF.

## I.   Standards

Federal Rule of Evidence 201 allows a court to take judicial notice of facts that can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The court may take judicial notice of documents that are matters of public record. *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)(A district court may take "judicial notice of matters of public record outside the pleadings" when determining whether a complaint fails to state a claim.).

## II.  Parties' Requests

The documents attached to Wells Fargo's Request for Judicial Notice and the HUD Handbook page attached to Plaintiff's Request are matters of public record and their accuracy is not reasonably subject to debate.

Accordingly, the Court **GRANTS** Wells Fargo's Request, **GRANTS** Plaintiff's Request, and takes judicial notice of the documents attached to Wells Fargo's Request as well as page 595 of the FHA Single Family Housing Policy Handbook attached to Plaintiff's Request.

## **WELLS FARGO'S MOTION (#65) TO STRIKE**

In its Reply to its Motion for Summary Judgment Wells Fargo moves to strike ¶¶ 6-8 and Exhibits 5 and 6 to the Declarations (#60-2, #63) of Jeffrey Long and the Amended Declaration (#68) of Jeffrey Long in Opposition to Wells Fargo's Motion for Summary Judgment.[4] The factual averments and exhibits involve events that occurred after Plaintiff filed his Complaint on October 4, 2017.

Wells Fargo notes discovery in this matter closed on September 20, 2018. Defense counsel Barbara Bollero states in her Declaration:

> [T]he factual averments of Paragraphs 6 through 8

---

[4] On November 30, 2017, Plaintiff filed the Declaration (#60-2) of Jeffrey Long as an exhibit to its Response to Wells Fargo's Motion for Summary Judgment. On December 4, 2017, Plaintiff filed the same Declaration of Jeffrey Long as a separate document (#63). The November 30 and December 4 Declarations are the same. On December 14, 2017, after Wells Fargo filed its Motion to Strike, Plaintiff filed an Amended Declaration of Jeffrey Long (#68) that contains the same statements and exhibits that Wells Fargo moves to strike in documents #60-2 and #63. The Court, therefore, considers Wells Fargo's Motion to Strike as to all three Declarations.

> of, and Exhibits 5 and 6 to, the Long Declaration
> were not disclosed by Plaintiff in his discovery
> responses, deposition testimony, or pleadings
> . . . at any time before [Plaintiff] fil[ed] . . .
> his summary judgment Response on November 30,
> 2018.

Second Suppl. Decl. of Barbara Bollero ¶ 5.  Bollero also testifies in her Declaration that she conferred with Plaintiff's counsel Jeffrey Long about Wells Fargo's intention to file a Motion to Strike these items, and Long initially stated he would amend his Declaration in light of the intended Motion to Strike. In his Amended Declaration, however, Long made the same factual averments and included the same exhibits that were at issue in Wells Fargo's Motion to Strike.

Plaintiff did not respond to Wells Fargo's Motion to Strike.

The Court **GRANTS** Wells Fargo's Motion to Strike on the ground that Plaintiff failed to disclose to Wells Fargo the factual averments contained in ¶¶ 6-8 and the documents attached as Exhibits 5 and 6 to the Long Declarations before Plaintiff filed his Response to Wells Fargo's Motion for Summary Judgment. The Court, therefore, **STRIKES** the factual averments of ¶¶ 6-8 and Exhibits 5 and 6 to the Long Declarations and does not consider those materials in reaching its decision on Defendants' Motions for Summary Judgment.


**DEFENDANTS' MOTIONS (#57, #59) FOR SUMMARY JUDGMENT**

Defendants move for summary judgment as to all of Plaintiff's claims.

## I.    Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a). The moving party must show the absence of a genuine dispute as to a material fact. *Emeldi v. Univ. of Or.*, 673 F.3d 1218, 1223 (9th Cir. 2012). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and point to "specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) "This burden is not a light one. . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id*. (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary

judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

"A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009)(citation omitted).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id.*

## II.  Plaintiff's First Claim:  Declaratory Judgment

In his First Claim for Declaratory Judgment Plaintiff asserts Defendants violated the Oregon Trust Deed Act (OTDA), Oregon Revised Statutes §§ 86.705, *et seq.*, with respect to the Trust Deed and Note on the ground that MERS did not have the

authority to assign the beneficial interest under the Trust Deed, and, therefore, all subsequent nonjudicial foreclosure activities, including QLS's attempted sale, are void.[5]

Defendants assert in their Motions that Wells Fargo is the beneficiary of the Deed of Trust because under Oregon law when a promissory note is transferred, the Deed of Trust also "transfers by operation of law and the party entitled to payment under the Note is the beneficiary notwithstanding the designation of MERS as the beneficiary in the Deed of Trust." *Romani v. NW Trustee Svcs.*, No. 3:11–cv–0382–PA, 2013 WL 6530583, at *3 (D. Or. Dec. 12, 2013). Accordingly, Wells Fargo argues it had the authority to appoint QLS as Successor Trustee, and QLS had the authority to foreclose the property. Thus, Defendants assert they did not violate the ODTA. Plaintiff did not address or respond to Defendants' assertions in his Response to Defendants' Motions.

As this Court explained in its February 6, 2018, Opinion and Order denying Plaintiff's Motion for Preliminary Injunction, the Oregon Supreme Court in *Brandrup v. ReconTrust Co*, 353 Or. 668

---

[5] In Plaintiff's Response to Defendants' Motions for Summary Judgment Plaintiff asserts he alleges in his First Claim that "the loan is insured by the FHA and is subject to the pre-foreclosure requirement provided by the FHA . . . [that] include[s] a face-to-face interview" that did not occur. Plaintiff's Complaint, however, contains that allegation only as to his Second Claim for breach of contract. The Court, therefore, addresses that allegation in its discussion of Plaintiff's Second Claim.

(2013), addressed whether MERS can be a beneficiary under the ODTA and noted "[f]or the purposes of O.R.S. § 86.735(1), the 'beneficiary' is the lender to whom the obligation that the trust deed secures is owed or the lender's successor in interest." *Brandrup*, 353 Or. at 673-74. The Oregon Supreme Court concluded MERS cannot be the beneficiary because it does not hold the beneficial right to repayment of the obligation. *Id*. at 693. "For the purposes of the OTDA, the only pertinent interests in the trust deed are the beneficial interest of the beneficiary and the legal interest of the trustee." *Id*. at 675.

The *Brandrup* court also concluded "the person entitled to repayment of the secured obligation also controls the foreclosure process." *Id*. at 688. "Because MERS does not have the right to receive repayment of the notes in these cases, the OTDA does not allow MERS to hold and transfer legal title to the trust deeds that secure them." *Id*. at 705. Thus, "[a]ny such transfers are invalid." *Id*. at 707. The *Brandrup* court, however, "also re-affirmed the longstanding principal [*sic*] that when a promissory note changes hands, the securing deed of trust follows by operation of law." *Romani*, 2013 WL 6530583, at *3 (citing *Brandrup*, 353 Or. at 694). Thus, when a promissory note is transferred, the Deed of Trust also "transfers by operation of law and the party entitled to payment under the Note is the beneficiary notwithstanding the designation of MERS as the

beneficiary in the Deed of Trust." *Id.*

In *Romani* the plaintiff's Trust Deed identified MERS as the beneficiary "solely as nominee for Lender and Lender's successors and assigns." The Lender in the promissory note was Sunset Mortgage, but Sunset subsequently transferred the Note "by endorsement in blank to Wells Fargo Bank, N.A." 2013 WL 6530583, at *1. Ultimately MERS transferred the Trust Deed to Wells Fargo, and Wells Fargo began foreclosure on the plaintiff's property. The plaintiff brought an action to rescind the trustee sale alleging, among other things, that the designation of MERS as beneficiary was invalid. The district court reviewed the Oregon Supreme Court's holding in *Brandrup* and agreed MERS could not hold or transfer legal title to the Trust Deed securing the plaintiff's mortgage. The district court, however, also noted *Brandrup's* affirmation that "when a promissory note changes hands, the securing deed of trust follows by operation of law." In *Romani* the record reflected

> the Note was transferred by endorsement in blank
> to Wells Fargo by the original lender[, the] Deed
> of Trust . . . also transferred to Wells Fargo, by
> operation of law. As the party entitled to
> payment under the Note and Deed of Trust, Wells
> Fargo was the beneficiary, notwithstanding the
> designation of MERS as beneficiary in the Deed of
> Trust.

2013 WL 6530583, at *3. The district court, therefore, concluded although

> [a]ny purported assignments of the Deed of Trust

> by MERS are legal nullities[,] Wells Fargo, as
> holder of the Note, possessed the right to appoint
> a successor trustee and to take all of the other
> actions necessary to initiate the non-judicial
> foreclosure. [Thus,] The involvement of MERS does
> not invalidate the completed sale.

*Id.*

Here the record reflects USA Direct Funding transferred the Note to Wells Fargo via the January 2, 2013, Allonge to Note. According to Wells Fargo, therefore, it was the beneficiary of the Trust Deed at all relevant times notwithstanding the designation of MERS as beneficiary in the Deed of Trust. Although as in *Romani*, the purported assignment of the Trust by MERS is a "legal nullity," the Court concludes Wells Fargo, as holder of the Note, nevertheless possessed the right to appoint a successor trustee and to take all actions necessary to initiate the nonjudicial foreclosure.

In addition, as this Court noted in its February 6, 2018, Opinion and Order, Wells Fargo has established it was in possession of the Note and Allonge to Note at the time it appointed QLS as the successor trustee and/or at the time QLS initiated foreclosure proceedings, and, therefore, it was a "person entitled to enforce [the Note]" pursuant to Oregon's Uniform Commercial Code. Specifically, Oregon Revised Statutes § 73.0203(1) states "[a negotiable] instrument is transferred when it is *delivered* . . . for the purpose of giving to the person receiving delivery the right to enforce the instrument."

Emphasis added.  Oregon Revised Statutes § 73.02030(2) explains "[t]ransfer of an instrument vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course."  Finally, Oregon Revised Statutes § 73.0301 defines a "person entitled to enforce an instrument" as "the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument."  Thus, for example, in *LNV Corp. v. Fauley* the court held

> the fact that the trust deed and Note have taken divergent paths is entirely inapposite.  There is no question that the Note has been transferred to LNV by endorsement, *and that LNV is in current physical possession of the Note*.  Therefore, LNV is the entity entitled to repayment of the [N]ote obligation, and, in turn, LNV is the beneficiary of the trust deed, irrespective of its "muddled" chain of title.

178 F. Supp. 3d 1043, 1048 (D. Or. 2016)(emphasis added).

The Court, therefore, concludes on this record that the purported assignment of the Trust Deed by MERS is a legal nullity, but Wells Fargo, as holder of the Note, nevertheless possessed the right to appoint a successor trustee and to take all actions necessary to initiate the nonjudicial foreclosure.

Accordingly, the Court grants Defendants' Motions for Summary Judgment as to Plaintiff's First Claim for Declaratory Judgment for violation of the ODTA.

### III. Plaintiff's Second Claim:   Breach of Contract

In his Second Claim Plaintiff alleges Defendants breached the Trust Deed and Note when they failed to meet a condition precedent required for acceleration of the mortgage. Specifically, Plaintiff asserts Defendants failed to arrange a face-to-face interview with Plaintiff "before three full monthly installments due on the mortgage [we]re unpaid"[6] as required by Housing and Urban Development (HUD) Regulation 24 C.F.R. § 203.604.  Plaintiff seeks damages on his Second Claim "in an amount to be determined at trial but not to exceed $466,000.00."

Defendants assert the face-to-face interview provision of the HUD regulations is an affirmative defense rather than a condition precedent required for acceleration of the mortgage; Wells Fargo substantially complied with HUD interview regulations; and even if Wells Fargo did not comply with the interview regulations, Plaintiff has not established Wells Fargo's noncompliance caused Plaintiff's damages.

"To state a claim for breach of contract, plaintiff must allege the existence of a contract, 'its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff.'" *Slover v. Or. Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570 (1996)(quoting

---

[6] The parties do not dispute the relevant period is August 11, 2014, through October 1, 2014.

*Fleming v. Kids and Kin Head Start*, 71 Or. App. 718, 721 (1985)).

## A. HUD regulations do not provide a private right of action.

Courts that have addressed the issue have concluded "the breach of [HUD servicing] regulations [such as 24 C.F.R. § 203.604] do[es] not ordinarily provide a private right of action." *Fowler v. Wells Fargo Bank, N.A., No.* 3:2017cv02092, 2017 WL 3977385, at *4 (N.D. Cal. Sept. 11, 2017)(quotations omitted). Nevertheless, in *Fowler* the court concluded HUD regulations "that are properly incorporated into a contract [may] form the basis of a breach of contract claim." *Id.* In *Fowler* the plaintiff "identified the provision of the promissory note — allegedly incorporating [the HUD regulations] — that Defendant allegedly breached and her resulting damages. The Court finds that this is enough . . . to survive at the motion to dismiss stage." *Id*.

Here the Note provides:

> If Borrower defaults by failing to pay in full any monthly payment, then Lender may, *except as limited by regulations of the Secretary in the case of payment defaults,* require immediate payment in full of the principal balance remaining due and all accrued interest. . . . This Note does not authorize acceleration when not permitted by HUD regulations.

Compl., Ex. 4 at 11 (emphasis added). The Trust Deed provides:

> In many circumstances regulations issued by the Secretary [of HUD] will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This

> Security instrument does not authorize
> acceleration or foreclosure if not permitted by
> regulations of the Secretary.

Compl., Ex. 4 at 8. Although the Ninth Circuit has not addressed
the issue, many courts have concluded inclusion of these types of
provisions in Trust Deeds and Notes is sufficient to incorporate
HUD regulations into Trust Deeds and Notes for breach-of-contract
claims. *See, e.g., Fowler*, 2017 WL 3977385, at *4 (finding the
plaintiff had established the trust deed and note incorporated
HUD regulations when they were referenced in the trust deed and
note); *Wright v. Wells Fargo*, No. 1:15-cv-02416-AT-JCF, 2015 WL
12159206, at *5 (N.D. Ga. Oct. 8, 2015)(same); *Njema v. Wells
Fargo*, 124 F. Supp. 3d 852, 864 (D. Minn. 2015)(same). *But see
Klein v. Wells Fargo*, No. A-14-CA-861-SS, 2014 WL 5685113, at *6
(W.D. Tex. Nov. 4, 2014)(finding the plaintiff did not have a
private right of action "notwithstanding referenced HUD
regulations in the note and deed of trust."). This Court,
however, need not decide whether the reference to HUD regulations
in the Trust Deed and Note incorporate those regulations by
reference sufficiently to support Plaintiff's claim for breach of
contract because the Court concludes Plaintiff has failed to
establish that Defendants' alleged breach caused Plaintiff's
damages.

**B.   HUD face-to-face interview regulations.**

HUD regulation  24 C.F.R. § 203.604 provides in

pertinent part:

> (b)  The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid.
>
> * * *
>
> (d)  A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property.

The United States Department of Housing and Urban Development FHA Single Family Housing Policy Handbook provides the following with respect to face-to-face interviews:

> **(A) Standard**
>
> The Mortgagee must have a face-to-face interview with the Borrower or make a reasonable effort to arrange a face-to-face interview no later than the 61st Day of delinquency.
>
> * * *
>
> **(2) Reasonable Effort in Arranging a Face-to-Face Interview**
>
> The Mortgagee must send to the Borrower via Certificate of Mailing or Certified Mail a letter providing information on:
> - the availability of face-to-face interviews; and
> - how to schedule the interview.
>
> The Mortgagee must also attempt to contact the Borrower at the mortgaged Property to provide information on the availability of face-to face interviews.

Pl.'s Req. for Judicial Notice, Ex. 1.

Plaintiff states in his Response to Defendants' Motions for Summary Judgment that Wells Fargo

> made no attempt to arrange a face-to-face interview. [It] did not send the Aazamis a letter, certified or otherwise, providing information on the availability of face-to-face interviews and how to schedule the interview. Wells Fargo did not attempt to contact the Aazamis at the mortgaged property to provide information.

Pl.'s Response at 4. The record, however, reflects Wells Fargo sent the Aazamis a certified letter on June 23, 2014, in which it advised them:

> Your mortgage loan is in default. Please contact us immediately to discuss your situation. We would like to meet with you to review your financial situation and determine possible options to assist you in bringing your loan current.
>
> Please call us at 1-800-416-1472 to set up a time to discuss your financial situation.

Joint Statement of Agreed Facts, Ex. C. As noted, the Aazamis signed a certified mail return-receipt on June 30, 2014, indicating they had received Wells Fargo's June 23, 2014, letter. Although the record does not reflect the Aazamis attempted to set up a face-to-face meeting with Wells Fargo after receiving the June 23, 2014, letter, the record shows Wells Fargo and Aletia Aazami spoke by telephone at least three times concerning the loan between August 22, 2014, and September 10, 2014, and that Wells Fargo left at least seven telephone messages during that same period requesting the Aazamis to return its call. Decl. of

23 - OPINION AND ORDER

Wells Fargo Bank at ¶ 31 and Ex. Z.  In addition, Wells Fargo also provided to the Aazamis information about workout options, different payment plans, and an FHA Home Affordable Modification Program (HAMP) trial plan.

Courts that have addressed the face-to-face interview requirement of § 203.604(d) have concluded letters such as those sent by Wells Fargo on June 23, 2014, satisfy the certified-letter provision of that regulation.  *See, e.g., Campbell v. Wells Fargo Bank, N.A.*, No. 1:14-CV-03341-TWT-JFK, 2016 WL 6496458, at *8 (N.D. Ga. Oct. 6, 2016); *Franklin v. BAC Home Loans Servicing, LP* No. 3:10-CV-1174-M, 2012 WL 2679496, at *5 (N.D. Texas June 6, 2012).  Adopting the reasoning of these courts, this Court finds Wells Fargo's June 23, 2014, letter complies with the certified-letter provision of § 203.604(d).

It is undisputed, however, that Wells Fargo did not make a trip to the property to see the Aazamis, and, therefore, Wells Fargo was not in strict compliance with the provisions in § 203.604(d) that requires "at least one trip to see the mortgagor at the mortgaged property."  Nevertheless, Wells Fargo asserts it substantially complied with the face-to-face interview provision of § 203.604(d) through its other contacts with the Aazamis.  In support of its assertion Wells Fargo relies on *Campbell, Franklin,* and *Dan-Harry v. PNC Bank, N.A.,* No. 17-136WES, 2018 WL 5044235 (D.R.I. Oct. 17, 2018).  In those cases

the mortgagee or its agent made a trip to the mortgaged property in an effort to arrange a face-to-face meeting, and the courts concluded only substantial compliance with § 203.604(d) was required.

This Court, however, need not decide whether substantial or strict compliance with § 203.604 is required or whether under these circumstances Wells Fargo substantially complied with § 203.604 because the Court concludes, as discussed below, that Plaintiff has not established that Defendants' failure to arrange a face-to-face interview after Plaintiff defaulted on his mortgage caused Plaintiff to suffer his alleged damages.

C.    **Plaintiff has not established Defendants' alleged breach caused Plaintiff's damages**.

In his Complaint Plaintiff alleges Defendants' breach of the Note by way of their failure to comply with § 203.604 caused Plaintiff to suffer $466,000 in damages.  Although it is not clear how Plaintiff calculated his alleged damages, it appears that sum may be the full amount that Plaintiff owed on his mortgage, which included unpaid principal, interest fees, and charges as of May 2017.  Plaintiff does not point to any evidence that Defendants' failure to arrange or to try to arrange a face-to-face meeting was the cause of Plaintiff's default or failure to pay his mortgage after August 2014 because, among other things, Plaintiff does not allege he would have been able to cure

his default at any relevant time.

Courts have held the plaintiffs in similar circumstances failed to support their breach-of-contract claims. For example, in *Njema* the plaintiff defaulted on his mortgage, and the defendant foreclosed on the mortgage. The plaintiff brought a breach-of-contract claim against the defendant on the ground that the defendant breached HUD Regulation 24 C.F.R. § 203.604, which the plaintiff asserted was incorporated by reference in his Note and Trust Deed. The court, however, concluded the plaintiff failed to prove that he suffered damages as a result of the defendant's failure to conduct a face-to-face meeting. The court rejected the plaintiff's assertion that the harm he suffered was caused by the foreclosure, and the court pointed out that the evidence established "the foreclosure was due to [the plaintiff's] default on [his] . . . mortgage loan." 124 F. Supp. 3d at 866. The court also rejected the plaintiff's assertion that the plaintiff would have received a loan modification and avoided foreclosure if a face-to-face meeting had occurred. The court noted that argument was "completely speculative and, frankly, irrelevant." *Id*.

Similarly, in *Wright* the plaintiff defaulted on her mortgage, and the defendant began foreclosure proceedings. The plaintiff filed an action alleging, among other things, a claim for breach of contract based on the defendant's alleged failure

to have a face-to-face meeting as required by 24 C.F.R.
§ 203.604.  The defendant filed a motion to dismiss the
plaintiff's breach-of-contract claim.  Although the court
concluded the plaintiff had established the note and trust deed
incorporated the HUD regulations and that the defendant breached
the regulations incorporated in the note and trust deed when it
failed to conduct a face-to-face meeting before initiating
foreclosure proceedings, the court granted the defendant's motion
to dismiss on the ground that the plaintiff failed to plead
damages that resulted from the defendant's alleged violation.
2015 WL 12159206, at *5.  Specifically, the plaintiff asserted
she suffered damages as a result of the defendant's breach
because the defendant reported the plaintiff's default to various
credit agencies, which resulted in the plaintiff receiving a
lower credit score and "blocked Plaintiff from obtaining credit."
*Id.*, at *6.  The court, nevertheless, concluded these allegations
did not "plausibly show" the defendant's failure to conduct a
face-to-face meeting caused her damages because "the alleged
damages to Plaintiff's credit and reputation were caused by her
own undisputed failure to make loan payments, not the alleged
actions of [the defendant]."  *Id.  See also Rourk v. Bank of N.
Am. Nat. Ass'n*, No. 4:12–CV–42 (CDL), 2013 WL 5595964, at *6
(M.D. Ga. Oct. 11, 2013)("Even if Defendant had not substantially
complied with [§203.604], it was Plaintiff's failure to tender a

single payment for nearly two years that caused her default status and the foreclosure.  Therefore, even if Plaintiff had demonstrated that Defendant failed to make a reasonable effort to arrange a face-to-face meeting with her, she has not established that such a failure caused her any damages.").

On this record the Court concludes Plaintiff has failed to establish that Defendants' alleged failure to comply with 24 C.F.R. § 203.604 caused Plaintiff to suffer damages.  The Court, therefore, grants Defendants' Motions for Summary Judgment as to Plaintiff's Second Claim for breach of contract.

## IV. Plaintiff's Third Claim:  Violation of 12 C.F.R. § 1024.36

In his Third Claim Plaintiff asserts Wells Fargo

> fail[ed] to provide all of the information
> requested by and through [Plaintiff's] third RFI,
> or to alternatively provide an appropriate basis
> pursuant to 12 C.F.R. § 1024.36(f)(1), by and
> through the response to such, constitutes a clear,
> distinct and separate violation of 12 C.F.R.
> § 1024.36.  Wells Fargo's actions are considered
> to be part of a pattern and practice of behavior
> in violation of Plaintiff's rights.

Compl. at ¶ 29.

Defendants move for summary judgment on the grounds that Plaintiff failed to set out with specificity the alleged insufficiency of Wells Fargo's response to Plaintiff's third RFI, Wells Fargo fully and timely responded to Plaintiff's third RFI, and Plaintiff has not established he suffered damages as a result of Wells Fargo's alleged failure to respond sufficiently to

Plaintiff's third RFI.

**A.    RESPA and Regulation X requirements**

The Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq.*, provides borrowers may inquire about mortgages by making a "qualified written request" (QWR) defined as:

> [A] written correspondence . . . that —
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(A).  To constitute a QWR under RESPA

> a borrower's request must:  (1) reasonably identify the borrower's name and account, (2) state the borrower's "reasons for the belief . . . that the account is in error" or "provide sufficient detail to the servicer regarding other information sought by the borrower," and (3) seek "information relating to the *servicing of (the) loan*."

*Diffely v. Nationstar Mortg.*, LLC, No. C17-1370 RSM, 2018 WL 1737780, at *6 (W.D. Wash. Apr. 11, 2018)(quoting 12 U.S.C. § 2605(e)(1)(B))(emphasis in *Diffely*).  When a qualified QWR requests mortgage-loan servicing, it is referred to as a request for information (RFI).  12 C.F.R. § 1024.36(a).

RESPA defines servicing as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any

29 - OPINION AND ORDER

loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower." 12 U.S.C. § 2605(i)(3). Servicing "does not include the transactions and circumstances surrounding a loan's origination – facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement. Such events precede the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors." *Medrano v. Flagstar Bank, FSB*, 704 F. 3d 661, 666-67 (9th Cir. 2012). In *Medrano* the Ninth Circuit upheld dismissal of the plaintiff's RESPA claim when the letters from the plaintiff to the loan servicer asserted the loan documents did not "accurately reflect the proper payment schedule represented by the loan broker." *Id*. at 667. The Ninth Circuit found the servicer did not have any duty to respond to the request. *Id.* Accordingly, courts have concluded RFIs "relating to the original loan transaction and its subsequent history" do not qualify as QWRs under RESPA. *Junod v. Dream House Mortg. Co.*, No. CV 11-7035-ODW(VBKx), 2012 WL 94355, at *4 (C.D. Cal. Jan. 5, 2012). *See also Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009)(dismissing the plaintiff's RESPA claim with prejudice and noting the requirement "[t]hat a QWR must address the servicing of the loan, and not its validity, is borne out by the fact that § 2605(e) expressly imposes a duty

upon the loan servicer, and not the owner of the loan."). Courts
have also held requests for information concerning specific
sections of pooling and servicing agreements do not "relate to
'servicing' of the loan, and [are] not subject to the RESPA
requirements." *Watson v. Bank of Am., N.A.*, No. 16CV513-
GPC(MDD), 2016 WL 6581846, at *6 (S.D. Cal. Nov. 7, 2016). Other
courts have concluded borrower's requests relating to loan
modification are not related to "servicing" of the loan. *See,
e.g., Smallwood v. Bank of America, N.A.*, No. 15cv336, 2015 WL
7736876, at *6 (S.D. Ohio, Dec. 1, 2015); *Mbakpuo v. Civil Wells
Fargo Bank, N.A.*, No. 13-2213, 2015 WL 4485504, at *8 (D. Md.
July 21, 2015)(request for a loan modification did not relate to
servicing of a loan); *Mayer v. EMC Morg. Corp.*, No 2:11-cv-147,
2014 WL 1607443, at *5-6 (N.D. Ind. April 22, 2014)(same); *Van
Egmond v. Wells Fargo Home Mortg.*, No. 12-0112, 2012 WL 1033281,
at *4 (C.D. Cal. Mar. 21, 2012)(holding RESPA only obligates loan
servicers to respond to borrowers' requests for information
relating to servicing of their loans, which does not include
loan-modification information); *Mobine v. OneWest Bank, FSB,*
11cv2550-IEG(BGS), 2012 WL 1520116, at *2 (S.D. Cal. Apr. 27,
2012)(same).

When a servicer receives a qualified RFI from a
borrower, the servicer must provide a written response
acknowledging receipt of the RFI within five days. 12 U.S.C.

§ 2605(e)(1); 12 C.F.R. § 1024.36(c).  RESPA and Regulation X require a servicer to respond to an RFI for the identity and address or other relevant contact information for the owner assignee of a mortgage loan within 10 days of receipt.  12 C.F.R. § 1024.36(d)(2)(i)(A); 12 U.S.C. § 2605(k)(1)(D).  The servicer must respond to RFIs seeking other information within 30 days of receipt.  12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1024.36(d).

When the servicer receives a QWR as defined in Regulation X, it must make corrections to the borrower's account or conduct an investigation, provide the borrower with a written explanation, and provide the contact information of someone who can assist the borrower.  12 U.S.C. §§ 2605(e)(2)(A)-(C).  When a borrower believes the servicer's response to the QWR is inadequate, the borrower "must provide facts to provide [the servicer with] notice as to why its response was not complete." *Watson*, 2016 WL 6581846, at *7.  A "general statement that [the servicer] failed to provide the requested information does not state a claim for violation of Regulation X."  *Id*.  *See also Norris v. Bayview Loan Serv., LLC*, No. CV15-643-MWF(DTBx), 2016 WL 337381, at *5 (C.D. Cal. 2016)(catchall assertion that the defendant did not "provide accurate and complete responses" was insufficient to state a claim under Rule 8); *Saterbak v. Nat'l Default Serv. Corp*., No. 15cv956-WQH-NLS, 2015 WL 5794560, at *19 (S.D. Cal. 2015)(the plaintiffs' allegations were not sufficient

when the plaintiffs alleged information provided by the servicer was "inadequate and incorrect" without providing facts to support that statement).

**B.    Plaintiffs Third RFI**

As noted, in his Third Claim Plaintiff asserts Wells Fargo "fail[ed] to provide all of the information requested by and through [Plaintiff's] third RFI, or to alternatively provide an appropriate basis" to decline to provide the information sought by Plaintiff.

In his Third RFI Plaintiff sought the following information from Wells Fargo:

> 1.    An exact reproduction of the life of loan mortgage transactional history for this loan from the contract system of record from your electronic software program for this loan. For purposes of identification, the life of loan transactional history means any software program or system by which the servicer records the current mortgage balance, the receipt of all payments, the assessment of any late fees or charges, and the recording of any corporate advances for any fees or charges including but not limited to property inspection fees, broker price opinion fees, legal fees, escrow fees, processing fees, technology fees, or any other collateral charge.  Also to the extent, this life of loan transactional history includes numeric or alpha-numeric codes, please attach a complete list of all such codes and state in plain English a short description for each such code.
>
> 2.    Copies of any and all servicing notes related to your servicing of the above referenced mortgage loan for the past two (2) calendar years.

3.  Copies of any and all broker's price opinions you performed or otherwise obtained for the above referenced property in relation to the above referenced mortgage loan.

4.  The physical location of the original note related to the above-referenced mortgage loan.

5.  A true and accurate copy of the original note related to the above referenced mortgage' loan.

6.  The identity, address, and other relevant contact information for the custodian of the collateral file containing the original collateral documents for the above referenced mortgage loan, including, but not limited to the original note.

7.  A detailed copy of your last two (2) analyses of the escrow account of the mortgage.

8.  Please state each and every date during the time period from January 10, 2014, to the present on which you received a complete loss mitigation application from the above-referenced borrower.  Please note that, pursuant to 12 C.F.R. § 1024.41(b)(1), a "complete loss mitigation application" is defined as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower."

Joint Statement of Agreed Facts, Ex. M at 1-2.  On May 24, 2017, Wells Fargo responded to Plaintiff's Third RFI and provided Plaintiff with information about the current status of the loan; information about the origination of the loan; loan-servicer information; and copies of the Trust Deed, Assignments of the Trust Deed, the Promissory Note, the Allonge to the Promissory

Note, the loan information report, and Plaintiff's various RFIs.

## C.  Analysis

Wells Fargo states in its Motion for Summary Judgment that its May 24, 2017, response fully complied with the requirements of RESPA and Regulation X because it provided all of the information requested by Plaintiff that was a QWR within the meaning of RESPA and Regulation X.  Specifically, Wells Fargo notes it did not respond to Plaintiff's requests for "physical location of the original note," the "custodian of the collateral file containing the original collateral documents," and "all broker's price opinions" because this information is "designed to challenge the validity of the loan itself and/or the owner's obligations, not whether the loan account is accurate," and, therefore, Plaintiff's requests for that information is not a QWR within the meaning of RESPA and Regulation X.  In his Response Plaintiff does not address Wells Fargo's contentions as to Plaintiff's Third Claim.

As noted, a QWR that requests mortgage-loan servicing information is an RFI.  12 C.F.R. § 1024.36(a).  The Ninth Circuit, however, has held servicing "does not include the transactions and circumstances surrounding a loan's origination – facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement.  Such events precede the servicer's role in receiving the borrower's payments

and making payments to the borrower's creditors." *Medrano*, 704
F. 3d at 666-67. District courts in the Ninth Circuit,
therefore, have concluded RFIs "relating to the original loan
transaction and its subsequent history" do not qualify as QWRs
under RESPA. *Junod*, 2012 WL 94355, at *4. *See also Watson*, 2016
WL 6581846, at *6 ("Other documents such as the investor
information, the current property value, a copy of the broker's
price option, automated valuation, or appraisal do not relate
to servicing but to loan origination and do not state a claim under
12 C.F.R. § 1024.36."); *Consumer Solutions*, 658 F. Supp. 2d at
1014 (dismissing the plaintiff's RESPA claim with prejudice
noting the requirement "[t]hat a QWR must address the servicing
of the loan, and not its validity, is borne out by the fact that
§ 2605(e) expressly imposes a duty upon the loan servicer, and
not the owner of the loan."). Other courts have concluded
borrower's requests relating to loan modification are not related
to "servicing" of the loan. *See, e.g., Smallwood*, 2015 WL
7736876, at *6; *Mbakpuo*, 2015 WL 4485504, at *8 (request for a
loan modification did not relate to servicing of a loan); *Mayer*,
2014 WL 1607443, at *5-6 (same); *Van Egmond*, 2012 WL 1033281, at
*4 (holding RESPA only obligates loan servicers to respond to
borrowers' requests for information relating to servicing of
their loans, which does not include loan modification
information); *Mobine*, 2012 WL 1520116, at *2 (same).

On this record the Court concludes Wells Fargo sufficiently responded to Plaintiff's Third RFI and complied with the requirements of RESPA and Regulation X. Accordingly, the Court grants Defendants' Motions for Summary Judgment as to Plaintiff's Third Claim.

## V. Plaintiff's Fourth Claim:  Violation of 12 C.F.R. § 1024.35

In his Fourth Claim Plaintiff asserts Wells Fargo failed to respond adequately to a Notice of Error (NOE) that Plaintiff sent Wells Fargo on July 19, 2017, regarding Wells Fargo's allegedly insufficient response to Plaintiff's Third RFI in violation of 12 C.F.R. § 1024.35(e)(1).

### A.  NOE Requirements

12 C.F.R. § 1024.35(a) provides in relevant part:  "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error."  12 C.F.R. 1024.35(b) sets out eleven "categories of covered errors" to which § 1024.35 applies.  12 C.F.R. § 1024.35(e)(1)(i) requires a servicer to respond to a NOE by either:

> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>
> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a

statement of the borrower's right to request
documents relied upon by the servicer in reaching
its determination, information regarding how the
borrower can request such documents, and contact
information, including a telephone number, for
further assistance.

12 C.F.R. § 1024.35(e)(1)(ii) provides:

If during a reasonable investigation of a notice
of error, a servicer concludes that errors
occurred other than, or in addition to, the error
or errors alleged by the borrower, the servicer
shall correct all such additional errors and
provide the borrower with a written notification
that describes the errors the servicer identified,
the action taken to correct the errors, the
effective date of the correction, and contact
information, including a telephone number, for
further assistance.

## B.    Analysis

Plaintiff relies on § 1024.35(b)(11) to support his

Fourth Claim.  Section 1024.35(b)(11) requires a servicer to

respond to a borrower's notice of "[a]ny other error relating to

the servicing of a borrower's mortgage loan."  Specifically,

Plaintiff alleges Wells Fargo violated § 1024.35(b)(11) when it

"refused to correct its error regarding Plaintiff's [RFI] for

servicing notes, broker price opinions, escrow analysis, and

receipt date for [Plaintiff's] loan modification applications."

Pl.'s Resp. at 15.

The Court has already concluded in the context of

Plaintiff's Third Claim that Plaintiff's requests for broker

price opinions and information on his loan-modification

applications were not QWR/RFIs within the meaning of RESPA and

Regulation X because they are not information about loan servicing. Wells Fargo, therefore, was not required to provide those materials to Plaintiff. Thus, Wells Fargo's failure to provide Plaintiff with broker price opinions is not a violation of § 1024.35. Moreover, although Wells Fargo was not required to do so under § 1024.35, Wells Fargo provided Plaintiff with the dates that it received each of Plaintiff's completed loan-modification applications in its August 3, 2017, NOE response letter to Plaintiff.

In addition, the record reflects Wells Fargo conducted an investigation of Plaintiff's account, provided Plaintiff with two years of servicing notes and escrow analysis, and provided an explanation of the reasons it believed Plaintiff's account was correct in its August 3, 2017, NOE response letter to Plaintiff. The Court, therefore, concludes Wells Fargo has established it complied with 12 C.F.R. § 1024.35.

Accordingly, the Court grants Defendants' Motions for Summary Judgment as to Plaintiff's Fourth Claim.


**CONCLUSION**

For these reasons, the Court **GRANTS** Wells Fargo's Request (#44) for Judicial Notice, **GRANTS** Plaintiff's Request (#62) for Judicial Notice, **GRANTS** Wells Fargo's Motion (#65) to Strike, **GRANTS** Wells Fargo's Amended Motion (#57) for Summary Judgment,

and **GRANTS** QLS's Motion (#59) for Summary Judgment.

IT IS SO ORDERED.

DATED this 22nd day of January, 2019.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge